UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF INDIANA; COMMON CAUSE INDIANA; HOOSIER ASIAN AMERICAN POWER; and EXODUS REFUGEE IMMIGRATION,<br><br>*Plaintiffs,*<br><br>v.<br><br>DIEGO MORALES, in his official capacity as Secretary of State for Indiana; J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division; and ANGELA M. NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division,<br><br>*Defendants.* | Civil Action No. 1:25-cv-02150-MPB-MJD |

## PLAINTIFFS' EMERGENCY MOTION FOR EXPEDITED DISCOVERY

Plaintiffs LEAGUE OF WOMEN VOTERS OF INDIANA, COMMON CAUSE INDIANA, HOOSIER ASIAN AMERICAN POWER, and EXODUS REFUGEE IMMIGRATION (collectively, "Plaintiffs") request limited, expedited discovery to facilitate a request for emergency injunctive relief to prevent Indiana from potentially disenfranchising thousands of eligible Indiana voters. Plaintiffs' Request for Expedited Discovery of Documents is attached as Exhibit A.

Plaintiffs' suit alleges that two recently enacted Indiana statutes violate several provisions of the Civil Rights Act ("CRA") and National Voter Registration Act ("NVRA"), which require the uniform and nondiscriminatory treatment of voters regardless of whether they were born a U.S. citizen or later became a U.S. citizen. *See* 52 U.S.C. § 20507(b)(1); 52 U.S.C. § 10101(a)(2)(A).

Section 17 of Indiana Public Law 65-2024, codified at Indiana Code ("I.C.") § 3-7-38.2-7.3 ("Current-Voter Citizenship Crosscheck Requirement"), and Section 9 of Indiana Public Law 241-2025, codified at I.C. § 3-7-26.3-37 ("New-Registrant Citizenship Crosscheck Requirement") (collectively, "the Challenged DPOC Provisions"), require *only* certain foreign-born U.S. citizens to provide documentary proof of citizenship ("DPOC") to register to vote or remain registered to vote. *See* I.C. §§ 3-7-38.2-7.3, 3-7-26.3-37. This requirement does not apply to *any* individuals born as U.S. citizens. In addition to forcing Plaintiffs to redirect their limited resources away from other core mission activities, the Challenged DPOC Provisions impose an imminent risk of disenfranchisement to Plaintiffs' members or clients and other voters not born as U.S. citizens whom Plaintiffs serve. This risk comes less than five months before Indiana's voter registration deadline for Indiana's 2026 primary elections.[1] Plaintiffs request targeted, expedited discovery to determine the scope of harm caused by the Challenged DPOC Provisions and fashion appropriate relief in Plaintiffs' forthcoming motion for a preliminary injunction.

Plaintiffs' request is narrowly focused on individual voter information[2] for affected groups of voters and voter registration applicants, all of which Defendants already maintain. Plaintiffs

---

[1] The last day to register to vote for the May 5, 2026, primary elections is April 6, 2026. Approximately 160,000 naturalized citizens reside in Indiana. *See* Rachel Strange, "Immigrants in Indiana: A demographic snapshot of the state's foreign-born population," InContext, In. Univ. Kelley Sch. of Bus., In. Bus. Res. Ctr. , July-Aug. 2024, vol. 25, no. 4, https://www.incontext.indiana.edu/2024/july-aug/article1.asp (last accessed Nov. 22, 2025). Many of these individuals may lack DPOC and so must obtain it with sufficient time to register to vote or ensure they remain registered.

[2] The identifying information should include all information kept within the Indiana State Voter Registration System ("SVRS"), including full name, residential address, mailing address (if different), full date of birth, phone number (if available), email address (if available), voter ID number, any associated state-issued ID numbers (such as driver's license number), all registration dates including earliest and most recent registration date, and current voter registration status, including whether the voter is (i) currently active; (ii) inactive but not canceled; (iii) re-registered; (iv) canceled at the individual's request; or (v) canceled by Defendants.

2

also request policy documents and guidance concerning the implementation of the Challenged DPOC Provisions, all of which are readily available to Defendants and can be produced with minimal burden. Specifically, Plaintiffs request on an expedited basis the following discovery from Defendants:

(1) Individualized information as contained in the Indiana Statewide Voter Registration System ("SVRS") database for all individuals who:

    a. Registered to vote, received a 30-day notice pursuant to the Current-Voter Citizenship Crosscheck Requirement, and provided DPOC;

    b. Registered to vote, received a 30-day notice pursuant to the Current-Voter Citizenship Crosscheck Requirement, failed to provide DPOC, and whose registration status was canceled;

    c. Registered to vote, received a 30-day notice pursuant to the Current-Voter Citizenship Crosscheck Requirement, failed to provide DPOC, and appealed their cancellation, including the status of these appeals;

    d. Registered to vote, received a 30-day notice that has yet to expire pursuant to the Current-Voter Citizenship Crosscheck Requirement, and have yet to provide DPOC;

    e. Registered to vote and have been flagged to receive a 30-day notice pursuant to the Current-Voter Citizenship Crosscheck Requirement, but that notice has not yet been sent;

    f. Attempted to register to vote, received a 30-day notice under the New-Registrant Citizenship Crosscheck Requirement, and provided DPOC;

    g. Attempted to register to vote, received a 30-day notice under the New-Registrant Citizenship Crosscheck Requirement, and did not provide DPOC and therefore had their registration application rejected;

    h. Attempted to register to vote, received a 30-day notice that has yet to expire pursuant to the New-Registrant Citizenship Crosscheck Requirement, and have yet to provide DPOC; and

(2) Any and all policy documents or other guidance relating to implementation of the Challenged DPOC Provisions.

Expedited production of this narrow and readily available set of documents will enable Plaintiffs to evaluate the imminent risk of disenfranchisement to eligible voters and the scope of necessary emergency relief. The information Plaintiffs gather will in turn inform this Court's

3

evaluation of the irreparable harm the Challenged DPOC Provisions have caused and continue to cause Plaintiffs, their members or clients, and members of the communities that they serve. The burden on Defendants to provide these important documents is minimal.

## **BACKGROUND**

On July 1, 2025, the Challenged DPOC Provisions went into effect. *See* I.C. §§ 3-7-26.3-37, 3-7-38.2-7.3. These laws rely on stale, error-ridden data and incorrect assumptions. Therefore, the laws produce a high likelihood that elections officials in Indiana will mistakenly identify U.S. citizen voters as noncitizens and disenfranchise them. Indiana *never* imposes this risk on individuals who were born U.S. citizens, only naturalized or derived citizens, making them second-class U.S. citizen voters who must produce DPOC to register or remain registered to vote. These risks are unnecessary and inconsistent with the National Voter Registration Act and the Civil Rights Act, which seek to increase voter registration and promote equal rights.[3] And the Challenged DPOC Provisions do not solve any real problems: only U.S. citizens may vote in state and federal elections, and the overwhelming evidence shows that Indiana does not face a problem with voting or attempts to vote by noncitizens. *See* Dkt. 1 ¶ 3.

The Challenged DPOC Provisions comprise the Current-Voter Citizenship Crosscheck Requirement and the New-Registrant Citizenship Crosscheck Requirement. The Current-Voter Citizenship Crosscheck Requirement directs the Indiana Election Division ("IED") to compare Indiana's statewide voter registration file with the Indiana Bureau of Motor Vehicles' ("BMV") database, to identify registrants who were issued a "temporary credential" (*i.e.*, a temporary driver's license or identification card) when they applied for a license or identification card before

---

[3] The NVRA was enacted to "increase the number of eligible citizens who register to vote," "enhance[] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b).

4

becoming a citizen. I.C. § 3-7-38.2-7.3(b). The statute then directs the voter's county election official to request that the identified registrants provide DPOC and to remove the voter from the rolls if they do not provide DPOC within 30 days. I.C. § 3-7-38.2-7.3(c). People born as U.S. citizens are not subject to this process under the statute, as they will never have had temporary credentials. Similarly, the New-Registrant Citizenship Crosscheck Requirement requires county voter registration officials to send a notice demanding DPOC from any individual whose voter registration application includes an identification number from a temporary credential. *See* I.C. § 3-7-26.3-37(a). Defendants will never burden individuals born as U.S. citizens with this process.

Using BMV data in this manner unlawfully discriminates against naturalized or derived citizens. Defendants require every person flagged as having a temporary credential to provide DPOC. Defendants implement the Challenged DPOC Provisions by mistakenly treating a temporary credential as a proxy for non-citizenship. It is not. Many Indiana residents who possess a temporary credential become U.S. citizens before their temporary credentials expire but do not update their credentials before expiration because neither federal nor state law requires them to obtain new identification after naturalization. Moreover, the BMV charges a fee to update one's driver's license or identification card. Thus, some U.S. citizens who are eligible to vote continue to have a valid temporary credential. *See* Dkt. 1 ¶¶ 9-10.

The Challenged DPOC Provisions harm Plaintiffs by creating confusion among voters and the organizations that assist them, forcing them to expend significant resources in order to effectively inform and assist impacted voters in complying with the new processes and requirements. Further, there is significant variation in implementation across Indiana's 92 counties. *See* Ex. B, Decl. of Common Cause Indiana ("CCIN Decl.") ¶ 13; Ex. C, Decl. of League of Women Voters of Indiana ("LWVIN Decl.") ¶ 15; Ex. D, Decl. of Exodus Refugee Immigration

("Exodus Decl.") ¶ 10; Ex. E, Decl. of Hoosier Asian American Power ("HAAP Decl.") ¶ 10. These variations have introduced confusion that has burdened each Plaintiff's work. *See* CCIN Decl. ¶ 12; LWVIN Decl. ¶ 14; Exodus Decl. ¶ 9; HAAP Decl. ¶ 9. For example, League of Women Voters of Indiana expends significant time and resources, which normally would be dedicated to direct-service voter registration activities, to investigate the varying citizenship verification processes employed at Defendants' direction and under their oversight in multiple jurisdictions. LWVIN Decl. ¶¶ 6-8. This investigation is essential for the League's volunteer training, public education, voter registration, and outreach work. *Id.* Additionally, Hoosier Asian American Power expends significant time and resources, which normally would be dedicated toward its other core activities, in educating its members and the public through a variety of channels about the Challenged DPOC Provisions and how to cure voter registration rejections and cancellations. HAAP Decl. ¶ 6.

Plaintiffs already exhausted informal and formal avenues to acquire the requested records before commencing this suit before this Court. On April 2, 2025, Plaintiffs League of Women Voters of Indiana, Common Cause of Indiana, and Hoosier Asian American Power notified the Indiana Secretary of State's Office and the Indiana Election Division of NVRA violations created by the Current-Voter Citizenship Crosscheck Requirement and requested relevant records under 52 U.S.C. § 20507(i). *See* Dkt. 1 ¶¶ 155-56. In subsequent correspondence dated April 4, May 20, May 22, June 19, and June 24, these Plaintiffs narrowed and clarified their requests, yet Defendants refused to produce the vast majority of the records requested. *Id.* ¶¶ 158-62. On July 1, 2025, pursuant to the NVRA, these same Plaintiffs requested records related to the New-Registrant Citizenship Crosscheck Requirement. *Id.* ¶¶ 163-64. Defendant Morales ignored these requests. *Id.* ¶ 168. In fact, to date, Defendant Morales has neither responded to a notice letter nor produced

6

a single record. Defendants King and Nussmeyer provided incomplete productions, primarily limited to nonresponsive materials, such as a summary of election-related legislation enacted by the Indiana State Legislature—available in the Indiana statute books—and a list of all publicly available election-related state forms. *Id.* ¶¶ 169-76.

Although Defendants' failure to adequately respond to Plaintiffs' records requests violated the NVRA and deprived Plaintiffs of key information, that is not the basis for this motion for expedited discovery, which seeks a more limited range of documents for the narrow purpose of evaluating the scope of Plaintiffs' harm in service of Plaintiffs moving for emergency injunctive relief.

Indeed, Plaintiffs seek expedited discovery to evaluate the harm that the Challenged DPOC Provisions impose on their members or clients and Indiana voters. These tasks are urgent. The Indiana primary election is six months away, on May 5, 2026, while the voter registration deadline is in five months, on April 6, 2026.[4] Given the time it often takes to receive statutorily acceptable DPOC, there is a serious risk that otherwise eligible voters will be unable to register before the registration deadline. Plaintiffs urgently need expedited discovery to prevent the disenfranchisement of eligible naturalized and derived citizens.

## ARGUMENT

This Court has broad discretion to manage the timing of discovery, including ordering expedited discovery before the parties have conducted their Rule 26(f) conference. Fed. R. Civ. P. 26(d) (authorizing deviation from ordinary discovery schedule); Fed. R. Civ. P. 26(d) Notes of Advisory Committee on Rules – 1993 Amendment, Subdivision (d) ("Discovery can begin earlier

---

[4] *See* 2026 Indiana Election Calendar, *Indiana Election Division*, https://www.in.gov/sos/elections/files/2026-Calendar-Brochure.FINAL-VERSION.pdf (last visited Nov. 25, 2025).

if authorized . . . by . . . order . . . . This will be appropriate in some cases, such as those involving requests for a preliminary injunction . . . ."); *see Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, 2011 WL 130098, at *3 (S.D. Ind. Jan. 14, 2011); Fed. R. Civ. P. 34(b).

District courts in the Seventh Circuit generally apply a "reasonableness" or "good cause" standard when evaluating a motion to expedite discovery for the purpose of a preliminary injunction. *See Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011); *Iglesias v. Fed. Bureau of Prisons*, 2021 WL 4820429, at *2 (S.D. Ill. Oct. 15, 2021); *Sheridan v. Oak St. Mortg., LLC*, 244 F.R.D. 520, 521-22 (E.D. Wisc. 2007); *Bell v. Taylor*, 2013 WL 12291876, at *1 (S.D. Ind. 2013). This Court has granted expedited discovery under this standard. *See Taylor v. Biglari*, 2014 WL 805951, *4 (S.D. Ind. Feb. 28, 2014); *In re Midwestern Pet Foods Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2021 WL 12248951, at *7 (S.D. Ind. Aug. 10, 2021) (citing *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419-20 (D. Colo. 2003) (following the standard used in *Philadelphia Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, 1998 WL 404820 (E.D. Pa. 1998))). A minority of courts, on the other hand, apply a modified preliminary injunction standard to such requests for expedited discovery. *See Ibarra*, 816 F. Supp. 2d at 554. Whichever standard this Court applies, Plaintiffs' request for expedited discovery should be granted.

I.      **PLAINTIFFS' REQUEST SATISFIES THE "REASONABLENESS" STANDARD**

Plaintiffs' motion should be granted because it satisfies the reasonableness test. *See id.*; *Orlando v. CFS Bancorp, Inc.*, 2013 WL 12329547, at *2 (N.D. Ind. Oct. 10, 2013). Courts applying the reasonableness test consider the following factors: (1) the breadth of discovery requests; (2) the purpose for requesting expedited discovery; (3) the burden on the defendants to comply; (4) how far in advance of the typical discovery process the request was made; and (5) whether a preliminary injunction is pending. *Ibarra*, 816 F. Supp. 2d at 554. Under this standard,

8

the need for expedited discovery must outweigh the prejudice to the responding party. *Id.*; *Roche Diagnostics Corp.*, 2011 WL 130098, at *3; *Orlando*, 2013 WL 12329547, at *2.

Plaintiffs easily satisfy this standard. Their discovery requests are narrowly tailored, necessary to prevent further harm, and will aid the Court's consideration of any forthcoming preliminary injunction motion. The requests will impose no hardship on Defendants because the requested documents are readily available and Plaintiffs are not making their requests unreasonably early.

### A.    The Discovery Requests Are Narrowly Tailored

*First*, this request for expedited discovery is reasonable because it is narrowly tailored to fit Plaintiffs' precise needs. Plaintiffs request two types of documents: (i) existing voter file information from SVRS; and (ii) policy documents or other guidance relating to implementation of the Challenged DPOC Provisions. These categories include information regarding the roughly 1,600 individuals who were reported to have been flagged by Defendants as potential noncitizens.[5]

These requests are tailored to Plaintiffs' immediate needs to determine the scope of harm caused by the Challenged DPOC Provisions. Plaintiffs seek on an expedited basis only information relevant to the scope and implementation of the Challenged DPOC Provisions, which will help them assess immediate risks posed to Plaintiffs' members' and beneficiaries' protected right to vote, *see supra*, pp. 2-3. For instance, Plaintiffs seek voter files to understand the scope of the impact of the Challenged DPOC Provisions and to know precisely who has been impacted by the Challenged DPOC Provisions. Plaintiffs also seek policy documents or other guidance showing how the program is being implemented.

---

[5] *See* Marilyn Odendahl, *Registration Requirement: SOS Office Identifies About 1,600 Hoosier Voter Who Need to Verify U.S. Citizenship Status*, The Indiana Citizen (Aug. 1, 2025), https://indianacitizen.org/registration-requirement-sos-office-identifies-about-1600-hoosier-voters-who-need-to-verify-u-s-citizenship-status/ (last visited Nov. 22, 2025).

Plaintiffs are requesting only records that are in Defendants' possession and readily available. Because Defendants maintain the Indiana SVRS, *see* I.C. § 3-7-26.3-4(b), they already have information regarding flagged voters and applicants from the BMV, *see* I.C. §§ 3-7-38.2-7.3(b), 3-7-26.3-37. Likewise, they already provide list maintenance guidance to all counties, *see* I.C. § 3-7-11-2. Accordingly, no burdensome search is required to comply with Plaintiffs' limited request, and Plaintiffs' request does not seek interrogatories, depositions, or other discovery that require extensive preparation.

### B. *Expedited Discovery Will Aid the Court's Preliminary Injunction Analysis*

*Second*, the purpose of the requested discovery is reasonable because it is necessary to develop the factual record to aid in the Court's prompt adjudication of a forthcoming preliminary injunction motion.

While this litigation presses on, Defendants' enforcement of the Challenged DPOC Provisions imminently threatens Plaintiffs' naturalized and derived citizen members or clients with the irreparable injury of disenfranchisement. *See, e.g.*, *League of Un. Latin Am. Citizens*, *v. Exec Off. of the President*, 780 F. Supp. 3d 135, 210-11 (D.D.C. 2025) (enjoining portion of executive order based partially on irreparable harm to plaintiffs' members). As discussed, some eligible U.S. citizen voters in Indiana have temporary credentials. Hundreds have already been required to provide DPOC to remain eligible voters.[6] Because election officials erroneously flag naturalized and derived citizens as potential noncitizens, Plaintiffs' members or clients who cannot provide DPOC are at a heightened risk of disenfranchisement.

The lack of information surrounding the implementation of the DPOC Provisions is also an impediment to understanding the scope of the harm to Plaintiffs' core missions. Upon

---

[6] *Id.*

10

information and belief, the 92 Indiana counties are implementing the Challenged DPOC Provisions in different ways. *See* Dkt. 1 ¶ 80. Plaintiffs do not fully understand the patchworked implementation of the Challenged DPOC through county officials. *See* CCIN Decl. ¶ 13; LWVIN Decl. ¶ 15; Exodus Decl.¶ 10; HAAP Decl. ¶ 10. Without expedited discovery, Plaintiffs cannot adequately assess how much more time and effort they will need to propose a remedy tailored to the harms caused by the Challenged DPOC Provisions. CCIN Decl. ¶ 13; LWVIN Decl. ¶ 15; Exodus Decl. ¶ 10; HAAP Decl. ¶ 10.

The need for expedited discovery and the preliminary injunctive relief it will enable is urgent because of the short time remaining before Indiana voters go to the polls. The Indiana primary election is only six months away. The voter registration deadline is April 6, 2026. Many recipients will need additional time to first obtain DPOC before registration or election day. Discovery on a normal timeline can drag on for months or even years, and preliminary injunction motions likewise take time to brief and resolve. If Plaintiffs must wait for discovery to play out in due course before they can move for a preliminary injunction, determine how Defendants are implementing Challenged DPOC Provisions, and identify who the Challenged DPOC Provisions affect, many more deadlines will pass, harming naturalized and derived citizens. Courts considering harms caused by voting laws recognize the urgency that election timelines create and routinely grant expedited discovery on that basis. *See, e.g.*, *Common Cause Ga. v. Kemp*, 347 F. Supp. 3d 1270, 1301 (N.D. Ga. 2018); *People First of Ala. v. Merrill*, 491 F. Supp. 3d 1076, 1143-44 (N.D. Ala. 2020).

### C.  *The Requested Relief Imposes a Minimal Burden on Defendants*

*Third*, as described above, *supra* Section I(A), Plaintiffs' requests will impose a minimal burden on Defendants. Defendants already possess the requested documents and many, such as policy documents or other guidance, are clearly identifiable and not numerous in nature. Federal

11

law already requires Defendants to maintain and to make publicly available upon request much of the requested information, which are all "records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i). Accordingly, providing these types of information and performing the necessary searches is a part of Defendants' regular course of business. *Id.*

Production will not require complicated preparation. The bulk of the requested discovery is voter files. Since January 2006, Defendants have maintained a single, uniform electronic database for voter registration records in the SVRS.[7] Under the Challenged DPOC Provisions, Defendants prepare lists of flagged individuals within the SVRS database, from which counties are directed to require DPOC. According to the very limited production Defendants provided on August 12, 2025, *see* Dkt. 1 ¶ 171, Defendants require counties to upload any subsequently provided DPOC and the resolution of registration cancellations and rejections back into the SVRS database. Plaintiffs are aware from public news reports that Defendants flagged about 1,600 people this summer, and Defendants presumably have flagged more people since those initial reports. Having already flagged these voters, Defendants may easily produce those lists for the purposes of this narrowly tailored request.

Nor will document production implicate significant privacy concerns during litigation. Before the commencement of this litigation and in response to public information requests, Defendants opposed disclosing sensitive personal information contained in voter files, arguably in violation of I.C. § 3-11-4-2.2. *See* Dkt. 1 ¶ 160. Regarding public records production, Defendants could have reduced those concerns with simple redactions. *See, e.g.*, *Public Interest Legal Found.*,

---

[7] *See Online Voter Registration*, https://www.in.gov/core/mobile/voter-registration.html (last visited Nov. 22, 2025).

*Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) ("[T]he Court believes that proper redaction of highly sensitive information can be accomplished without an undue burden on the State."); *Public Interest Legal Found., Inc. v. Bellows*, 664 F. Supp. 3d 153, 166-67 (D. Me. 2023) (concluding that a state's "interest in protecting the privacy of its citizens is not so great as to permit noncompliance with the Public Disclosure Provision") (citing *Matthews*, 589 F. Supp. 3d at 942). Even if Defendants were concerned about state privacy laws prohibiting disclosure, the NVRA Public Records Provision preempts those laws. *See, e.g.*, *Matthews*, 589 F. Supp. 3d at 943 (holding that state law is preempted by Section 8(i)). Moreover, any privacy concerns that Defendants have related to production of voter files can be eliminated by a protective order. *See Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 413-14 (S.D. Ind. 2001) (holding expedited discovery may take place under a protective order).

Further, Plaintiffs do not seek depositions on an expedited basis. And the requested documents are unlikely to implicate attorney-client, work-product, or deliberative-process privilege that would necessitate extensive privilege review because Plaintiffs' requests mostly encompass records of individual voters.

Overall, Defendants can respond to Plaintiffs' requests through a straightforward and minimally invasive production.

### D.    *Plaintiffs' Request Was Not Made Unreasonably Early in the Litigation*

*Fourth*, Plaintiffs are not seeking discovery prematurely. Plaintiffs already exhausted informal and formal avenues to acquire the requested records in public records requests before commencing this suit before this Court. *See supra* p. 6-7; *see also Bell v. Taylor*, 2013 WL 12291876, at *1 (S.D. Ind. 2013) (granting expedited discovery because court record demonstrated various communications between parties for requested records before the filing of the motion). Plaintiffs request a narrower range of information than sought in the public records requests,

13

targeted solely at enabling Plaintiffs to quickly and reliably assess the scope of harm and necessary relief.

### E. *Plaintiffs Will Imminently Move for a Preliminary Injunction*

*Finally*, Plaintiffs' request for expedited discovery is reasonable because they will use the requested information to facilitate a motion for a preliminary injunction. Plaintiffs, their members or clients, and members of the affected communities they serve are currently suffering and are at risk of irreparable injury because of the Challenged DPOC Provisions. The requested discovery will enable Plaintiffs to understand the extent of the disenfranchisement that voters face and the additional resources Plaintiffs will have to devote to aid their members or clients in avoiding that harm. That information will aid the Court in resolving that forthcoming motion as quickly as possible. *See Sheridan*, 244 F.R.D. at 521 (finding that disputes involving a request for preliminary relief "are examples of situations which may warrant expedited discovery") (citing 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2046.1 (2d ed. 1998)).

Because Plaintiffs' discovery requests are reasonable in light of the surrounding circumstances, the motion should be granted. *See, e.g.*, *Ibarra*, 816 F. Supp. 2d at 554.

## II. **PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY EVEN UNDER THE MINORITY APPROACH**

Although the vast majority of courts in the Seventh Circuit apply the reasonableness standard, a minority of district courts have applied a modified preliminary-injunction standard to determine whether expedited discovery is warranted. *See Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385, 387 (E.D. Wis. 2009). Under that approach, a moving party is entitled to expedited discovery if it shows (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and avoidance of the irreparable injury, and

(4) evidence the injury that will result without expedited discovery looms greater than the injury defendants will suffer if expedited discovery is granted. *Ibarra*, 816 F. Supp. 2d at 554. To be sure, this Court should apply the reasonableness standard adopted by the majority of courts in the Seventh Circuit. Indeed, it is more appropriate to apply the reasonableness standard, rather than the preliminary-injunction-hearing standard, where, as here, a plaintiff seeks expedited discovery "to prepare for a preliminary injunction hearing." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000). By contrast, in *Edgenet*, the court applied the preliminary-injunction-hearing standard because plaintiff's "end legal goal . . . [was] not to take emergency action to prevent the harms complained of in its motion." 259 F.R.D. at 387.

But even if this Court were to apply the minority standard, Plaintiffs' motion satisfies it. Plaintiffs here are suffering irreparable injury to their core missions through the diversion of limited staff time and other resources spent mitigating the implementation of the Challenged DPOC Provisions on eligible voters, which endangers its members' and the public's fundamental right to vote. CCIN Decl. ¶ 6; LWVIN Decl. ¶ 8; Exodus Decl. ¶ 7; HAAP Decl. ¶ 8. The requested limited expedited discovery would help prevent further irreparable harm to voters and Plaintiffs by enabling Plaintiffs to better understand the full scope of the harms that the Challenged DPOC Provisions cause to eligible voters and facilitate Plaintiffs' preliminary injunction filing before the 2026 Primary Elections. CCIN Decl. ¶¶ 12-13; LWVIN Decl. ¶¶ 14-15; Exodus Decl. ¶¶ 9-10; HAAP Decl. ¶¶ 9-10. Plaintiffs allege cognizable NVRA and CRA violations and are likely to succeed on the merits of their claims, as courts in other states have enjoined similar programs. *See Mi Familia Vota v. Fontes*, 691 F.Supp.3d 1077, 1103-04 (D. Ariz. 2023), *aff'd in part, vacated in part*, 129 F.4th 691 (9th Cir. 2025); *Fish v. Kobach*, 189 F.Supp.3d 1107, 1151 (D. Kan. 2016); *Ga. Coal. for the People's Agenda v. Kemp*, 347 F.Supp.3d 1251, 1270 (N.D. Ga. 2018). Finally,

15

Plaintiffs have shown that this expedited discovery, limited to records readily available, is minimally burdensome for Defendants, *supra* Section I(C), and so the injury to Defendants from producing these records is not greater than the irreparable harm that Plaintiffs, Plaintiffs' members or clients, and other affected eligible voters will suffer absent their production.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for expedited discovery. Plaintiffs will serve the Request for Expedited Discovery, attached as Exhibit A, within three days of the Court's order granting the motion. Plaintiffs respectfully request that the Court order Defendants to produce responsive documents within 14 days of service of the Request.

Dated: November 28, 2025

Respectfully submitted,

*/s/ William R. Groth*
William R. Groth (Ind. Bar No. 7325-49)
Daniel Bowman (Ind. Bar No. 31691-49)
Bowman Legal Services, LLC
9292 N Meridian Street, Suite 311
Indianapolis, IN 46260
(317) 912-3220
daniel@bowmanlegalservices.com
wgroth@fdgtlaborlaw.com

*/s/ Aneel Chablani*
Aneel Chablani*
Ami Gandhi (Ind. Bar No. 38542-53)
Conner Kozisek*
Chicago Lawyers' Committee for Civil Rights
25 East Washington Street, Suite 1300
Chicago, IL 60602
(312) 630-9744
achablani@clccrul.org
agandhi@clccrul.org
ckozisek@clccrul.org

/s/ Robert Weiner
Robert Weiner*
Ryan Snow*
Grace Thomas*
Samantha Heyward*
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
(202) 662-8600
rweiner@lawyerscommittee.org
rsnow@lawyerscommittee.org
gthomas@lawyerscommittee.org
sheyward@lawyerscommittee.org

*Counsel for Plaintiffs*

*Appearing Pro hac vice*

**CERTIFICATE OF SERVICE**

      I, William R. Groth, hereby certify that on November 28, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Indiana by using the CM/ECF system.

                                                                      */s/ William R. Groth*
                                                                      William R. Groth