# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

LEAGUE OF WOMEN VOTERS OF
INDIANA; COMMON CAUSE
INDIANA; HOOSIER ASIAN
AMERICAN POWER; and EXODUS
REFUGEE IMMIGRATION,

        *Plaintiffs,*

        v.

DIEGO MORALES, in his official
capacity as Secretary of State for Indiana;
J. BRADLEY KING, in his official
capacity as Co-Director of the Indiana
Election Division; and ANGELA M.
NUSSMEYER, in her official capacity as
Co-Director of the Indiana Election
Division,

        *Defendants.*

Civil Action No 1:25-cv-02150-MPB-MJD

## DECLARATION OF COMMON CAUSE INDIANA

Julia Vaughn declares the following pursuant to 28 U.S.C. § 1746.

    1.    I currently serve as Executive Director at Common Cause Indiana ("CCIN"). I have served in this role since 2022. I began my employment at CCIN in 1994.

    2.    Common Cause Indiana is the Indiana operations of Common Cause, a nonprofit, nonpartisan, grassroots organization dedicated to upholding the core values of American democracy. CCIN works to create an open, honest, and accountable government that serves the public interest; promotes equal rights, opportunity, and representation for all; and empowers all people to make their voices heard in the political process. CCIN is based in Indianapolis, Indiana.

    3.    In my capacity as Executive Director, I am familiar with the new requirements imposed on voters by the Current-Voter Citizenship Crosscheck Requirements, under I.C. §§ 3-7-

38.2-7.3, and the New-Registrant Citizenship Crosscheck Requirement, I.C. §§ 3-7-26.3-37 (collectively, "Challenged DPOC Provisions").

4.    CCIN is interested in eliminating barriers to voting and supporting the right to vote. CCIN focuses its voting rights efforts on helping marginalized communities who often have difficulty navigating changes to new voting laws while making sure its work can benefit all Indiana voters. These interests are germane to the organization's mission.

5.    Every state and federal election year, CCIN recruits, trains, and deploys volunteers through its Election Protection project to help voters at risk of being disenfranchised. These volunteers help respond to Hoosiers' questions and concerns around voting and registering to vote.

6.    CCIN must steer scarce resources away from other core activities and devote substantial time and organizational resources to counteract the harms from the Challenged DPOC Provisions on the populations that CCIN serves.

7.    For instance, CCIN has had to partner with at least 25 organizations, many of which work with people of color or immigrant communities, to teach these partners about the Challenged DPOC Provisions, which is work that it would not have had to otherwise undertake.

8.    CCIN has had to dedicate one of its two staff members to serve as a liaison with organizational partners impacted by the Challenged DPOC Provisions. This staff member works 35 hours per week and spends one hour per week performing these new duties. In addition, prior to the effective date of the Challenged DPOC Provisions, this staff member spent four hours per week developing materials and preparing for outreach in response to the Challenged DPOC Provisions. The staff member is an organizer who would be focusing on a different community organizing project if not having to spend time responding to the Challenged DPOC Provisions.

9.    CCIN has tabled at 15 community events in response to the Challenged DPOC Provisions, hosted a public webinar and 18 meetings about the Challenged DPOC provisions, and held roundtable discussions with 23 organizational representatives, diverting one of its two employees away from CCIN and partner organizations.

10.    CCIN has diverted a significant amount of time and money to educating and assisting voters with maintaining their registration if they are affected by the Challenged DPOC Provisions.

11.    CCIN has suffered irreparable harm due to the implementation of the Challenged DPOC Provisions, and CCIN expects to experience further harm absent relief.

12.    CCIN currently lacks information on the scope of Defendants' implementation of the Challenged DPOC Provisions and how many of its members are affected. As a result, organization leaders, individuals, and voters are confused about how the Challenged DPOC Provisions have been, and will continue to be, implemented, and the extent to which the Challenged DPOC Provisions may irreparably harm its members in light of the April 6, 2026, voter registration deadline for Indiana's next primary election.

13.    CCIN understands that Indiana's 92 counties are implementing the Challenged DPOC Provisions in different ways. Information concerning implementation of the law would allow CCIN to better understand the extent to which the Challenged DPOC Provisions are harming its members. This information would also help CCIN determine how much more time and resources it must divert from its core mission to address the harms imposed by the Challenged DPOC Provisions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 24, 2025                    Respectfully submitted,

/s/ _____

Julia Vaughn, Executive Director
Common Cause Indiana