UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF INDIANA, <br> COMMON CAUSE INDIANA, <br> HOOSIER ASIAN AMERICAN POWER, <br> EXODUS REFUGEE IMMIGRATION, <br><br> Plaintiffs, <br><br> v. <br><br> DIEGO MORALES, <br> J. BRADLEY KING, <br> ANGELA M. NUSSMEYER, <br><br> Defendants. | No. 1:25-cv-02150-MPB-MJD |

**ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs have filed a Motion to Compel the Defendants to produce documents containing individualized voter information, which they are seeking in anticipation of a future motion for preliminary injunction. [Dkt. 40.] For the reasons explained below, the motion is **GRANTED**.

## I. Background

### A. Parties, Claims, and Defenses

Plaintiffs are four non-profit organizations dedicated to expanding voting rights, including the voting rights of minorities and refugees. [Dkt. 1 at ¶¶ 19-22.] They are suing Indiana Secretary of State Diego Morales and the Co-Directors of the Indiana Secretary of State's Election Division, Bradley King and Angela Nussmeyer, in their official capacities, over two Indiana election laws that went into effect in July 2025: the Current-Voter Citizenship

Crosscheck Requirement,[1] and the New-Registrant Citizenship Crosscheck Requirement.[2] *Id.* at ¶¶ 6-7, 12, 23-24.

According to the Complaint, the Current-Voter Citizenship Crosscheck Requirement requires Defendants King and Nussmeyer to compare Indiana's statewide voter registration file with the Bureau of Motor Vehicle's ("BMV") file of temporary credentials. *Id.* at ¶ 37. Noncitizens may receive temporary credentials from the BMV, and any individual who is flagged during this crosscheck as having temporary BMV credentials is presumed to be a noncitizen and must present documentary proof of citizenship ("DPOC") within thirty days of receiving notice. *Id.* at ¶¶ 38, 44. The voter registration of an individual who does not submit DPOC within the thirty-day deadline will be canceled. *Id.* at ¶ 46. Individuals may appeal the cancelation of their voter registration to their county election board. *Id.* at ¶ 47.

The New-Registrant Citizenship Crosscheck Requirement flags individuals with temporary BMV credentials who register to vote. *Id.* at ¶ 53. The law requires county voter registration officials to contact those individuals and demand DPOC before approving their voter registration. *Id.* This law does not allow for appeals. *Id.* at ¶ 56.

The Complaint alleges that naturalized or derived citizens who were issued temporary BMV credentials before they became citizens, and whose temporary credentials have not yet expired, will be flagged under these new election laws even though, as citizens, they are eligible to vote. *Id.* at ¶¶ 42, 54. Those naturalized or derived citizens will then either be disenfranchised or subjected to proof of citizenship requirements to which other citizens are not subjected. *Id.* at ¶¶ 58, 59. Based on these allegations, Plaintiffs claim that the new election laws unlawfully

---

[1] Ind. Code § 3-7-38.2-7.3
[2] Ind. Code § 3-7-26.3-37

discriminate against naturalized and derived citizens in violation of the Civil Rights Act of 1964 and the non-discriminatory provision of the National Voter Registration Act ("NVRA"). *Id.* at ¶¶ 218-33 (Counts III and IV). They also claim that these laws violate the NVRA's requirement that states accept an individual's sworn attestation of citizenship in a mailed voter registration application form and NVRA's provision prohibiting states from imposing additional proof of citizenship requirements. *Id.* at ¶¶ 192-217 (Counts I and II).

Plaintiffs claim in Count V of the Complaint that Defendants have refused to provide them with certain individualized voter information in violation of NVRA's public records provision. *Id.* at ¶¶ 234-41. Count V also seeks records relating to a Memorandum of Agreement between the Indiana Secretary of State and U.S. Citizenship and Immigration Services ("USCIS") regarding access to Systematic Alien Verification and Entitlements ("SAVE") data. *Id.* at ¶ 174, 246.

Defendants have filed a Motion to Dismiss the Complaint based in part upon lack of organizational or associational standing. [Dkt. 29.] Plaintiffs' deadline to respond to that motion has not yet passed, and the motion is not ripe for resolution. However, Defendants' standing challenge is relevant to some of their objections to Plaintiffs' discovery requests, as will be discussed in more detail below.

### B. Expedited Discovery and Objections

The Court granted in part Plaintiffs' request for expedited discovery in anticipation of their future motion for preliminary injunction. [Dkt. 33.] As part of this expedited discovery, Plaintiffs have requested documents containing the following information:

1. Individualized voter information for:

a. All registered voters who registered, received a thirty-day notice pursuant to the Current-Voter Citizenship Crosscheck Requirement, and provided DPOC.

b. All registered voters who registered, received a thirty-day notice pursuant to the Current-Voter Citizenship Crosscheck Requirement, failed to provide DPOC, and who have now been removed from the rolls.

c. All registered voters who registered, received a thirty-day notice pursuant to the Current-Voter Citizenship Crosscheck Requirement, failed to provide DPOC, and appealed their removal, including the status of these appeals.

d. All registered voters who registered, received a thirty-day notice that has yet to expire pursuant to the Current-Voter Citizenship Crosscheck Requirement and have yet to provide DPOC.

e. All registered voters who registered, have been flagged to receive a thirty-day notice pursuant to the Current-Voter Citizenship Crosscheck Requirement, but that notice has not yet been sent.

f. All individuals who attempted to register to vote, received a thirty-day notice pursuant to the New-Registrant Citizenship Crosscheck Requirement, and provided DPOC.

g. All individuals who attempted to register to vote, received a thirty-day notice pursuant to the New-Registrant Citizenship Crosscheck Requirement, and did not provide DPOC and therefore had their registration application rejected.

   h. All individuals who attempted to register to vote, received a 30-day notice that has yet to expire pursuant to the New-Registrant Citizenship Crosscheck Requirement, and have yet to provide DPOC.[3]

[Dkt. 17-1 at 8-9.]

  Defendants object to these discovery requests. [Dkt. 36-1.] They argue that discovery requests 1(a)-(h) are "nearly identical" to the documents sought in Count V and would prematurely moot those claims, that the requested documents include confidential information that will need to be redacted, that the redaction process will be overly burdensome, and that the requested documents are not relevant to Plaintiff's claims in this lawsuit.[4] *Id.*

---

[3] Plaintiffs have also served Request for Production 2, which seeks, "All memoranda, policies, reports, guidance, instructions, data, summaries, or similar Documents regarding the implementation of any aspect of the Challenged DPOC Provisions." Defendants object that this request "calls for some privileged information. Specifically, this request potentially includes emails asking for legal advice from the Defendants. These emails would fall under attorney-client, work-product, and deliberative process privilege." [Dkt. 36-1 at 14.] In accordance with the Court's previous Order, Defendants intend to respond to Request for Production 2 by January 8, 2026, at which time they will produce a privilege log if necessary. [Dkts. 33, 46 at ¶ 9.] Because these privilege claims have not yet been asserted, the question of whether documents encompassed by Request for Production 2 are subject to a privilege is not presently ripe for the Court's review. The Court will address whether any documents encompassed in Request for Production 2 are subject to a privilege, if necessary, after that issue has been fully briefed.

[4] In their initial objection to these discovery requests, Defendants also stated that the Indiana Secretary of State does not possess the requested documents and that producing the documents would have a "chilling effect on voter registration." [Dkt. 36-1 at 6-14.] Defendants do not raise these arguments in their response brief opposing the Motion to Compel. [*See generally* dkt. 42.] Because Defendants have not included these arguments in responding to the Motion to Compel, the arguments are forfeited and need not be addressed in his Order. *See Torry v. City of Chicago, 932 F.3d 579, 589 (7th Cir. 2019)* ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point.").

The Court held a discovery conference to discuss this dispute and then set an expedited briefing schedule for the Motion to Compel. [Dkt. 38.] Plaintiff's Motion to Compel is now fully briefed and ripe for the Court's review. [Dkts. 40, 41, 42, 49.]

## II. Legal Standard

"Discovery is a mechanism to avoid surprise, disclose the nature of the controversy, narrow the contested issues, and provide the parties a means by which to prepare for trial." *Todd v. Ocwen Loan Servicing, Inc.*, 2020 WL 1328640, at *1 (S.D. Ind. Jan. 30, 2020). Federal Rule of Civil Procedure 26(b)(1) outlines the scope of permissible discovery and provides that parties to a civil dispute are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," regardless of admissibility. *Est. of Daniels by Stover v. City of Indianapolis*, 2021 WL 4844145, at *1 (S.D. Ind. Oct. 18, 2021). The burden "rests upon the objecting party to show why a particular discovery request is improper[,]" and the objecting party "must show with specificity that the request is improper." *Hunt v. Hubler Chevrolet, Inc.*, 2019 WL 1043163, at *2 (S.D. Ind. Mar. 4, 2019).

## III. Discussion

The Court begins with Defendants' general objection that granting the Motion to Compel would effectively moot Plaintiffs' claims under Count V of the Complaint. [Dkt. 42 at 3-4.] In support of this argument, Defendants rely on a Freedom of Information Act ("FOIA") lawsuit in which the plaintiff moved to compel the production of the very same documents that were previously denied pursuant to his FOIA request. *Id.* (citing *Robbins v. U.S. Bureau of Land Management*, 219 F.R.D. 685 (D. Wyo. 2004)). In denying the motion to compel, the court reasoned that granting the motion "would convert the discovery motion into a dispositive motion and dispose of the case. The time is not yet ripe for the determination of dispositive motions.

6

Therefore, the Court finds that the instant motion is premature and will deny the motion." *Id.* at 688.

By contrast, and as explained in more detail below, the Motion to Compel in the present case seeks documents that are relevant to Plaintiffs' claims under Counts I-IV, and these documents would therefore be discoverable even if Plaintiffs had not included their public records claim in Count V. The fact that Plaintiffs have chosen to bring an NVRA public records claim does not limit the discovery to which they are entitled on their other claims.

Defendants next argue that the documents Plaintiffs seek in the Motion to Compel contain confidential information that will need to be redacted under Indiana law, that the redaction process will be overly burdensome, and that the redaction process cannot be completed in a timely manner. [Dkt. 42 at 4-6.] This argument is unpersuasive. As an initial matter, the Court notes that parties regularly exchange documents in litigation that contain confidential information, *e.g.* hospital records that are confidential under HIPAA. A very common solution to this problem is to produce those documents pursuant to a confidentiality protective order. If documents containing confidential information are eventually filed in the case, the confidential information could potentially be redacted, or the documents could be filed under seal. *See* Fed. R. Civ. P. 5.2; S.D. Ind. Local Rule 5-11. Defendants have not shown any reason to deviate from that common practice in this case.

Additionally, even if redactions were necessary, Defendants have not met their burden of showing that redacting the confidential information from the documents would be overly burdensome. "[I]f a party is to resist discovery as unduly burdensome, it must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome."

7

*Barker v. Kapsch TrafficCom USA, Inc.*, 2019 WL 8301693, at *2 (S.D. Ind. Aug. 30, 2019). This showing typically requires affidavits or other evidence supporting a party's assertions of burden. *See, e.g., Jenkins v. White Castle Mgmt. Co.,* 2014 WL 3809763 at *2 (N.D. Ill. Aug. 4, 2014) ("What is required is affirmative proof in the form of affidavits or record evidence."); *Burton Mech. Contractors, Inc. v. Foreman,* 148 F.R.D. 230, 233 (N.D. Ind. 1992) ("An objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence.").

Here, Defendants have not produced an affidavit indicating the time and expense that would be involved in redacting the confidential information from the documents that are encompassed by Requests for Production 1(a)-(h). Instead, they cite record evidence that there are approximately 1,600 voter files that they contend would need to be redacted and summarily conclude that "screening and redacting a minimum of 1,600 voter files, each containing an undetermined number of documents, is unreasonable and places an undue burden on Defendants." [Dkt. 42 at 5-6.] The Court is not convinced that redacting information from 1,600 voter files would be overly burdensome, and, in any event, redactions are not necessary or permitted at this time because the documents will be produced pursuant to a protective order.

Finally, Defendants argue that the documents Plaintiffs seek in the Motion to Compel are not relevant to the claims in this lawsuit. Plaintiffs state that the documents are discoverable because they demonstrate the scope of harm that the challenged statutes have wrought. [Dkt. 41 at 4-5.] In response, Defendants argue that the only issue in this lawsuit is whether the "Challenged Statutes on their face impose different or additional requirements in violation of federal law," which makes scope of harm irrelevant to Plaintiffs' claims. [Dkt. 42 at 6] (citing Fed. R. Civ. P. 26(b)(1)). They surmise that Plaintiffs have an ulterior motive in seeking

8

individual voter information—namely, to find an individual plaintiff who has standing to sue—and they argue that using discovery for the sole purpose of finding a named plaintiff would be improper. *Id.*; *see also* [Dkt. 29] (Defendants' Motion to Dismiss for lack of organizational and associational standing). Plaintiffs reply that individual voter information showing the scope of harm is of central importance in this case, specifically to their anticipated motion for preliminary injunction, because

> [u]nderstanding the scale, criteria, and impact of Defendants' voter list maintenance activities—including how many voters have been flagged, their demographic information, and the basis for the flags—is necessary to determine the scope of the harm caused by the Challenged DPOC Provisions and facilitate Plaintiffs' forthcoming motion for preliminary injunction, for which Plaintiffs must prove irreparable harm.

[Dkt. 49 at 4.]

The Court agrees with Plaintiffs that the requested documents are relevant to their anticipated motion for preliminary injunction, for which they will need to show irreparable harm in the absence of an injunction and that the balance of equities favors an injunction. *See, e.g., Indiana Protection and Advocacy Services Commission v. Indiana Family and Social Services Administration,* 149 F.4th 917, 928 (7th Cir. 2025). The harm alleged in the Complaint is that these election laws are burdening naturalized and derived citizens with proof of citizenship requirements to which other citizens are not subjected, and that this disruption has and will continue to injure the organizational Plaintiffs, which must expend resources in response to the disruption arising from these laws. [Dkt. 1 at ¶¶ 2, 8, 10.] Documents showing the number of naturalized and derived citizens who have been flagged pursuant to these election laws are relevant to these allegations. Therefore, Defendants have not met their burden of challenging Plaintiffs' discovery request for lack of relevance.

9

The Court also rejects Defendants' request for a protective order "barring Plaintiffs from contacting individuals whose information they find in the discovery" submitted in response to Requests for Production 1(a)-(h). [Dkt. 42 at 7.] Defendants make this request because they believe the Plaintiffs' true purpose in seeking this discovery is to find an individual plaintiff with standing to sue. *Id.* The Court acknowledges Defendants' concern on this point and agrees that seeking discovery for the **sole** purpose of finding an individual with standing to sue would be improper. However, Plaintiffs may have other reasons to contact individuals who have been flagged under the two challenged election laws. For example, to show that the election laws are creating the harm that they allege in the Complaint, Plaintiffs will need to show that the law is flagging naturalized or derived citizens. If the law were merely flagging noncitizens, there likely would be little if any discriminatory harm, and Plainitffs' anticipated motion for preliminary injunction may well fail. Thus, Plaintiffs may need to contact individuals who have been flagged by the two election laws in order to establish that those individuals are, in fact, naturalized or derived citizens. The protective order that Defendants request would significantly hamper those efforts.

In sum, the requested documents are relevant to Plaintiffs' claims, specifically with respect to their anticipated motion for a preliminary injunction, which will require them to show that the challenged election laws will cause irreparable harm in the absence of an injunction. Defendants have not shown that redacting confidential information would be overly burdensome, and in any event, there is no basis to redact the confidential information because the documents will be produced pursuant to a protective order. Accordingly, Plaintiffs' Motion to Compel is **GRANTED**.

## IV. Conclusion

For the reasons explained above, Plaintiff's Motion to Compel is **GRANTED**. [Dkt. 40.] Defendants shall fully respond to requests for production 1(a)-(h) by **January 16, 2026**, and produce all responsive documents without redaction, with the exception of any privileged, work product, or otherwise protected documents for which a proper privilege log must be produced by January 16, 2026.  The Court will issue a Uniform Protective Order contemporaneously with the issuance of this Order.

SO ORDERED.

Dated: 8 JAN 2026

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email[5]

---

[5] The Court notes that attorney Robert Weiner was granted leave to appear *pro hac vice* in this case on October 23, 2025, and ordered to register with the Court's Electronic Filing System within seven days. [Dkt. 10.]  It does not appear that he has complied with this Order.  He shall do so immediately, and the Clerk is instructed not to expend resources serving Mr. Weiner by mail with this or any other Order in this case.

11