# EXHIBIT 1

UNITED STATES DISTRICT
COURT SOUTHERN
DISTRICT OF INDIANA

LEAGUE OF WOMEN VOTERS OF
INDIANA; COMMON CAUSE
INDIANA; HOOSIER ASIAN
AMERICAN POWER; and EXODUS
REFUGEE IMMIGRATION,

*Plaintiffs,*

v.

DIEGO MORALES, in his official
capacity as Secretary of State for Indiana;
J. BRADLEY KING, in his official
capacity as Co-Director of the Indiana
Election Division; and ANGELA M.
NUSSMEYER, in her official capacity as
Co-Director of the Indiana Election
Division,

*Defendants.*

Civil Action No. 1:25-cv-02150-MPB-MJD

## DEFENDANT DIEGO MORALES' RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

Defendant Diego Morales, Secretary of State of the State of Indiana, responds to Plaintiffs'

First Set of Interrogatories as follows:

## INTERROGATORY NO. 1:

*Describe the process through which You implement each of the Challenged DPOC*

*Provisions, including but not limited to the Crosscheck Processes, the role of each Defendant*

*in the process, and the frequency with which the Crosscheck Processes are conducted at*

*each stage.*

1

The Secretary of State office confirms that a certificate of naturalization number provided in lieu of the naturalization documentation is valid under IC 3-7-38.2-7.3(a)(3). The office has an email account that allows the County election officials to send a individual's name, date of birth, and naturalization number. That information is then uploaded into the SAVE platform that is run by USCIS to determine the individual's legal status and if the naturalization number provided matches the name and date of birth on the voter registration.

**INTERROGATORY NO. 2:**

*Describe in detail what steps, if any, You have taken to verify, amend, or supplement the BMV data regarding individuals who have a temporary credential before using it to flag registered voters and voter registration applicants under the Challenged DPOC Provisions, including but not limited to what steps You have taken to ensure the BMV data are current and accurate and the sources of any other data used to verify the citizenship status of registered voters or voter registration applicants before flagging them under the Challenged DPOC Provisions.*

Our agency Memorandum of Understanding with the Bureau of Motor Vehicles outlines the data set provided electronically from the BMV to SVRS. A copy of the Memorandum was produced as LWVI000288.000001. State law does not allow our agency to further supplement or amend the data transmitted by the BMV. The Secretary of State has no further role in verifying specific voter registration data.

**INTERROGATORY NO. 3:**

*Identify and describe each communication between You and any Indiana county election official regarding the implementation of any aspect of the Challenged DPOC Provisions, including but not limited to any formal or informal written instructions or*

2

*guidance, any trainings or training materials, and any questions or related correspondence from or with county election officials.*

The Secretary of State issued guidance in the form of an email to county election officials indicating how county officials may request citizenship verification. That email was produced to Plaintiffs as LWVI000333. No further guidance has been issued by this office.

## INTERROGATORY NO. 4

*Describe in detail any differences in implementation of the Challenged DPOC Provisions by Indiana county election officials of which You are aware, including any variations in: (a) whether and which Indiana counties accept DPOC after the 30-day voter registration deadline; (b) the circumstances under which counties may cancel registrations or reject applications; and (c) whether and which counties have applied the Challenged DPOC Provisions to individuals who registered before July 1, 2025.*

The Secretary of State is not aware of any differences in implementation of the Challenged Statutes.

## INTERROGATORY NO. 5

*Describe in detail the content, format, and method of delivery of the VRG-26 notices sent to registered voters and voter registration applicants pursuant to the Challenged DPOC Provisions, including but not limited to whether such notices are sent in any language other than English, whether such notices inform recipients of their right to appeal and how they may submit an appeal, whether and how recipients may cure by providing DPOC, whether and how the notices explain what forms of DPOC are acceptable to satisfy the Challenged DPOC Provisions, whether the notices inform recipients of the consequences of failing to respond to the notice within 30 days, whether the notices include a specific date by*

3

*which to respond with DPOC, and whether You track the mailing, delivery, and receipt of such notices, including any notices returned as undeliverable and the reasons the United States Postal Service indicates they were returned as undeliverable.*

The Secretary has no role or knowledge of the notice process.

**INTERROGATORY NO. 6**

*Describe in detail the appeal and/or cure process, if any, available to registered voters whose registrations are canceled pursuant to the Current-Voter Citizenship Crosscheck Requirement, including but not limited to the procedures for appealing the cancellation, how flagged individuals are informed about the appeal and/or cure process, whether flagged individuals may vote provisionally before providing DPOC, the deadline for flagged individuals who vote provisionally to provide DPOC in order for their ballot to be counted, and whether an individual who provides DPOC after the 30-day voter registration deadline may be reinstated.*

The Secretary has no role or knowledge of the appeal process.

**INTERROGATORY NO. 7**

*State the total number of appeals filed by registered voters whose registrations were canceled pursuant to the Current-Voter Citizenship Crosscheck Requirement since July 1, 2025, and for each such appeal, state the outcome, including whether the voter's registration was reinstated and whether they subsequently cast a ballot in any election, the type of ballot cast, and whether the ballot was counted.*

The Secretary has no role or knowledge of the appeal process.

**INTERROGATORY NO. 8:**

*Describe in detail the appeal and/or cure process, if any, available to voter*

4

*registration applicants whose applications are rejected pursuant to the New-Registrant*

*Citizenship Crosscheck Requirement, including but not limited to the procedures for*

*appealing the rejection, how flagged individuals are informed about the appeal and/or cure*

*process, whether flagged individuals may vote provisionally before providing DPOC, the*

*deadline for flagged individuals who vote provisionally to provide DPOC in order for their*

*ballot to be counted, and whether a flagged individual who registers before the 30-day voter*

*registration deadline and provides DPOC after the 30-day voter registration deadline will*

*have their registration accepted.*

The Secretary has no role or knowledge of the appeal process.

**<u>INTERROGATORY NO. 9:</u>**

*State the total number of appeals filed since July 1, 2025, by voter registration*

*applicants whose applications were rejected pursuant to the New-Registrant Citizenship*

*Crosscheck Requirement, and for each such appeal, state the outcome, including whether the*

*applicant was permitted to register.*

The Secretary has no role or knowledge of the appeal process.

**<u>INTERROGATORY NO. 10:</u>**

*Describe in detail any agreement or arrangement between You and USCIS regarding*

*access to and use of SAVE for voter registration or list maintenance purposes, including but*

*not limited to when the agreement was executed, the specific data accessed through SAVE,*

*how SAVE has been used in connection with the Challenged DPOC Provisions, when and*

*how often voter registration information is compared against SAVE, and whether You have*

*used or considered using SAVE in addition to or as an alternative to requiring individual*

*flagged voters to provide DPOC, and if not, why not.*

The Secretary of State has access to the SAVE database to verify a certificate of naturalization number as permitted under IC 3-7-38.2-7.3(a)(3). As referenced in Interrogatory 3, the Secretary's Office is available to verify citizenship at the request of county election officials.

**INTERROGATORY NO. 11:**

*Identify and describe all categories of immigration status or citizenship status information that You have used to flag registered voters or voter registration applicants pursuant to the Challenged DPOC Provisions, including but not limited to temporary credential status, lawful permanent resident status, and temporary lawful status. For each such category, describe: the process by which the information was obtained; how the information was used; and what information regarding the category was transmitted to county election officials, including whether county election officials were informed of the immigration status category that caused each individual to be flagged.*

The Secretary of State does not flag voters or applicants, nor does the Secretary have any role in determining how any designation is used by county officials. Consequently, the Secretary lacks sufficient knowledge to answer this question.

**INTERROGATORY NO. 12:**

*Describe in detail the role of Civix in implementing the Challenged DPOC Provisions, including but not limited to the specific services Civix provides, the terms of any contract or agreement between each/any Defendant and Civix, the process by which Civix generates lists of individuals flagged under the Challenged DPOC Provisions, any known errors, deficiencies, or discrepancies in the various lists generated by Civix, and the process by which You verify or validate the accuracy of such lists before or in the course of relying upon them in implementing the Challenged DPOC Provisions.*

6

The Secretary of State lacks sufficient knowledge about Civix's role in implementing the Challenged Statutes to answer this interrogatory.

**INTERROGATORY NO. 13:**

*To the extent You contend that the Challenged DPOC Provisions comply with the NVRA and the CRA, identify and describe all facts and evidence that You contend support that position, including but not limited to the factual basis for asserting: that DPOC is "necessary" information under the NVRA; the Challenged DPOC Provisions are "nondiscriminatory" in compliance with Section 8(b) of the NVRA; implementation of the Challenged DPOC Provisions has been "uniform" in compliance with Section 8(b) of the NVRA; the Challenged DPOC Provisions do not apply different standards, practices, or procedures to naturalized and derived citizens who have or had BMV temporary credentials in violation of the CRA; and the Challenged DPOC Provisions constitute a permissible voter roll maintenance program rather than an additional requirement imposed on the voter registration process.*

Defendant Morales objects to this interrogatory to the extent that it asks for legal conclusions. Whether the Challenged Statutes comport with the NVRA and the CRA is a question of law. Consequently, there are no facts in support of this argument. To the extent that Defendants have argued that the Challenged Statutes are consistent with federal law, Plaintiffs are referred to Section III of Defendants' Brief in Support of their Motion to Dismiss (Dkt. 30) and Section III of Defendants Response to Plaintiffs' Motion for Preliminary Injunction (Dkt. 94).

SUPPLEMENTAL RESPONSE**:** The Challenged Statutes are the result of a legitimate legislative process and have not been found in violation of state or federal law. Defendant

7

Morales is legally obligated to enforce the Challenged Statutes. Therefore, there is no reason for Defendant Morales to have compiled research or data in support of the Challenged Statutes. Consequently, Defendant Morales does not point to any facts in response to this interrogatory. To the extent that it is related to this case, Defendant Morales has reasonable belief of multiple instances of noncitizens registering to vote and subsequently voting. The Secretary of State is conducting an ongoing investigation into these instances.

**INTERROGATORY NO. 14:**

*Identify (by name, date, person(s) involved and, if produced, by Bates number) and describe all studies, tests, samplings, or other information You have conducted, commissioned, or collected related to the anticipated or experienced impact of the Challenged DPOC Provisions on voter registration and voter participation in Indiana, including but not limited to information related to the number of registered voters or voter registration applicants flagged or expected to be flagged under the Challenged DPOC Provisions, the number of BMV temporary credential holders who are United States citizens, the potential for the BMV temporary credential data to erroneously flag United States citizens, the number of registered voters or voter registration applicants in Indiana who are not United States citizens, over any period of time, or whether and at what frequency any voter who is not a United States citizen has ever cast a ballot in Indiana.*

The Secretary has not conducted, commissioned, or collected studies, tests, samplings, or other information related to the Challenged Statutes.

**INTERROGATORY NO. 15:**

*Identify the total number of registered voters and voter registration applicants who have been flagged under, identified by, or otherwise subjected to the Challenged DPOC*

8

*Provisions since the effective date of each provision, including but not limited to: the total number flagged under the Current-Voter Citizenship Crosscheck Requirement, the total number flagged under the New-Registrant Citizenship Crosscheck Requirement, the total number who provided DPOC within the 30-day notice period and were confirmed as eligible voters without cancellation or rejection of their registration, the total number whose registrations were canceled or applications rejected for failure to provide DPOC, the total number whose 30-day notice period has not yet expired, and the total number whose registrations were canceled or applications rejected but who subsequently re-registered and provided DPOC establishing their United States citizenship and were registered or reinstated to the voter rolls.*

The Secretary lacks sufficient information to respond to this interrogatory because the Secretary is not involved in the aforementioned process.

**INTERROGATORY NO. 16:**

*Describe whether You have taken any steps to proactively identify United States citizens who may have been erroneously flagged, and if so, describe those steps.*

County voter registration officials determine whether to approve voter registration applications and take the subsequent action. The Secretary of State has no role in determining whether to approve voter registration applications.

By:        */s/ John Oberdorf*
John Oberdorf
Deputy Attorney General
Attorney No. 37951-49

OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770

Telephone: 317-232-6217 (Oberdorf)
Facsimile: (317) 232-7979
E-mail: John.Oberdorf@atg.in.gov

## **VERIFICATION**

I have reviewed the foregoing responses. Based on a reasonable inquiry, I declare under

penalty of perjury that these responses are true and correct to the best of my knowledge,

information and belief.

Dated August 3, 2026                     _____/s/ Jerald Bonnet_____
                                                                Jerald Bonnet, General Counsel
                                                                Office of the Indiana Secretary of State

10