**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF INDIANA; COMMON CAUSE INDIANA; HOOSIER ASIAN AMERICAN POWER; and EXODUS REFUGEE IMMIGRATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>DIEGO MORALES, in his official capacity as Secretary of State for Indiana; JOSEPH E. MCCLAIN, in his official capacity as Co-Director of the Indiana Election Division; and ANGELA M. NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division,<br><br>*Defendants*. | Civil Action No. 1:25-cv-02150-MPB-MJD |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING SUPREME COURT DETERMINATION IN RELEVANT CASES**

Plaintiffs League of Women Voters of Indiana ("LWVIN"), Common Cause Indiana ("CCIN"), Hoosier Asian American Power ("HAAP"), and Exodus Refugee Immigration ("Exodus") (collectively, "Plaintiffs") hereby oppose Defendants' Motion to Stay Proceedings Pending Supreme Court Determination in Relevant Cases (Dkt. 114) ("Motion To Stay").

## INTRODUCTION

After months of discovery, and on the eve of the fact discovery deadline, Defendants filed a motion requesting a stay of this case pending Supreme Court decisions in *Republican National Committee v. Mi Familia Vota, et al.*, docketed at 25-1017 ("*RNC*") and *Warren Petersen, et al. v. Mi Familia Vota, et al.*, docketed at 25-1019 ("*Petersen*"). Defendants made no attempt to meet their burden of showing that a stay is necessary or appropriate. Nor could they meet that burden.

Key claims Plaintiffs assert in this case are not at issue in the questions presented in the petitions in *RNC* or *Petersen*. Further, a stay would irreparably harm Plaintiffs and Indiana voters while increasing the burden on them and the Court. Accordingly, the Court should deny Defendants' Motion To Stay.

## BACKGROUND

In October 2025, Plaintiffs filed this lawsuit seeking declaratory judgment and temporary and permanent injunctive relief prohibiting the enforcement of Indiana Code ("I.C.") § 3-7-38.2-7.3 ("Current-Voter Citizenship Crosscheck Requirement") and I.C. § 3-7-26.3-37 ("New-Registrant Citizenship Crosscheck Requirement") (collectively, the "Challenged DPOC Provisions"). Compl. ¶ 5, Dkt. 1. The Challenged DPOC Provisions single out Hoosiers who have become U.S. citizens. *Id.* ¶ 2. Thousands of naturalized and derived citizens must now produce documentary proof of citizenship ("DPOC") to register or to remain registered to vote—a requirement no U.S.-born citizen will ever be forced to comply with. *Id.* This process has already misidentified hundreds of confirmed eligible U.S. citizens as potential noncitizens; as of May 5, 2026, Defendants have required DPOC from approximately 977 confirmed eligible citizens after the Challenged DPOC Provisions erroneously identified them as noncitizens. Pls' Mem. L. Supp. Mot. Prelim. Inj. at 23, Dkt. 85 ("Prelim. Inj. Mem."). Potentially thousands of eligible Indiana voters face disenfranchisement in the upcoming November 3, 2026, General Election and beyond, including during 2027 municipal elections. *See id.*; *see also* I.C. § 3-10-6-5. The Challenged DPOC Provisions harm Plaintiffs by requiring them to divert their scarce resources away from their core missions and business activities, such as protecting and expanding voting rights access, in order to respond to, educate, and support voters impacted by the Challenged DPOC Provisions. *See* Compl. ¶¶ 88–154; *see also* Prelim. Inj. Mem. at 12, 20–22. These harms will continue without relief.

Plaintiffs allege that the Challenged DPOC Provisions discriminate against naturalized and derived citizens, violating both the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501-20511, and the Civil Rights Act of 1964 ("CRA"), 52 U.S.C. § 10101, and violating the NVRA's requirements for federal and state voter registration forms. *See* Compl. ¶¶ 192–241; *see also* Pls' Statement of Claims at 3–6, Dkt. 116 ("Statement of Claims"). Plaintiffs separately allege that Defendants violated the NVRA Public Records Provision by withholding voter records and other information that the NVRA mandates be disclosed in response to Plaintiffs' records request. *See* Compl. ¶¶ 234–41; Statement of Claims at 6. Because of the gravity of these violations and the harms caused by them, Plaintiffs requested expedited discovery on November 28, 2025, and moved for preliminary relief on May 8, 2026. Pls' Emergency Mot. Exp'd Discovery, Dkt. 17 ("Mot. Exp'd Disc."); Mot. Prelim. Inj., Dkt. 84 ("Prelim. Inj. Mot.").

On August 20, 2026, the day before the close of fact discovery, Defendants moved to stay proceedings on the basis that "[t]here are two cases currently docketed with the U.S. Supreme Court that will address whether the National Voter Registration Act preempts states from requiring documentary proof of citizenship." Mot. Stay ¶ 4. The parties seeking certiorari filed their requests with the Supreme Court on December 5, 2025, and the Court granted certiorari in only one of the cases, *RNC*, on June 29, 2026. *See* Proceedings and Orders, *Republican National Committee v. Mi Familia Vota, et al.*, docketed at 25-1017 ("*RNC* Proceedings and Orders") and Proceedings and Orders, *Warren Petersen, et al. v. Mi Familia Vota et al.*, docketed at 25-1019 ("*Petersen* Proceedings and Orders"). The Court has not granted certiorari in *Petersen*.

Plaintiffs oppose Defendants' requested stay.

## **STANDARDS OF REVIEW**

In exercising its discretion to stay proceedings, a court "must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). Defendants,

as the proponents of the stay, "bear[] the burden of establishing [their] need" for a stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). "The Court may consider three factors in ruling on the Motion To Stay: the prejudice or tactical disadvantage to the non-moving party; whether or not issues will be simplified by the decision in the other case; and whether or not a stay will reduce the burden of litigation on a party." *Johnson v. Navient Sols., Inc.*, 150 F. Supp. 3d 1005, 1007 (S.D. Ind. 2015).

**ARGUMENT**

**I. THERE IS NO BASIS TO STAY ALL PROCEEDINGS BECAUSE THE PENDING CASES WILL NOT RESOLVE THE ISSUES IN THIS MATTER**

The Court should not grant a stay because a decision in *RNC* and a potential decision in *Petersen*—if the Court granted certiorari at a later date—would not simplify the issues in *this* case. *See id.* at 1007. Defendants have not meaningfully attempted to show that decisions in *RNC* and *Petersen* could simplify the issues in this case because they cannot do so. Certain claims Plaintiffs bring are not implicated at all by the certiorari petitions in *RNC* and *Petersen* and Supreme Court consideration of *RNC*. To the extent there is any similarity among the NVRA issues in *RNC*, *Petersen*, and this case, those similarities are superficial. Defendants insist that "[w]hether the NVRA preempts a state's proof of citizenship requirement," as determined in *RNC* and *Petersen*, overlaps with all the issues Plaintiffs present. Mot. Stay ¶ 5. But this is belied by the questions presented in the certiorari petitions. The relevant question presented in *RNC* is: "Does the National Voter Registration Act or a federal consent decree prohibit Arizona from requiring voter-registration applicants to produce 'satisfactory evidence' of U.S. citizenship when registering with a state registration form?" Petition for Writ of Certiorari at i, *Republican National Committee v. Mi Familia Vota, et al.*, docketed at 25-1017 ("*RNC* Petition for Writ of Certiorari").[1] The *Petersen*

[1] The Petition for Writ of Certiorari in *RNC* also asks the Court to address: "Does the National Voter Registration Act prohibit Arizona from implementing a program within 90 days of a federal election to cancel the registrations of

petition asked a similar question. *Petition for Writ of Certiorari* at i, *Warren Petersen, et al. v. Mi Familia Vota et al.*, docketed at 25-1019 ("*Petersen* Petition for Writ of Certiorari") ("Whether the NVRA or a prior consent decree precludes Arizona from requiring documentary proof of citizenship and residence when applicants use its state-specific form to register to vote in federal elections."). As described below, these questions have no direct bearing on Plaintiffs' claims *here*, and to the extent they implicate one or more of Plaintiffs' claims, they do so tangentially and speculatively.

*First*, none of the questions presented in *RNC* or *Petersen* address Plaintiffs' claims concerning the discriminatory nature of the Challenged DPOC Provisions under both the NVRA and the CRA.[2] Plaintiffs contend that the Challenged DPOC Provisions violate the CRA by subjecting naturalized and derived citizens to different standards than individuals who are born U.S. citizens. *See* Statement of Claims at 5–6. Plaintiffs separately argue the Challenged DPOC Provisions violate Section 8(b) of the NVRA by requiring DPOC only from registrants or applicants who are naturalized or derived citizens flagged as having temporary BMV credentials. *See id.* at 5. Plaintiffs also contend that Defendants have implemented the Challenged DPOC Provisions nonuniformly, in violation of the NVRA and CRA. *See id.* at 5–6. The issues presented in *RNC* and *Petersen* do not involve the provisions of the CRA or the NVRA at issue here, and thus any Supreme Court decision in those cases will have no bearing on Plaintiffs' claims. Critically, aside from the tangential nature of the specific questions on which the Court granted certiorari, the Arizona statute at issue in the *RNC* and *Petersen* litigations applies broadly to voter

voters who are not U.S. citizens?" *RNC* Petition for Writ of Certiorari at i. This question is irrelevant to Plaintiffs' claims.

[2] Though the Ninth Circuit decision currently on appeal concluded that Arizona's DPOC requirement violated a federal consent decree, Sections 6, 7, 8(b), 8(c), and 9 of the NVRA, and the Materiality and Different Standards, Practice and Procedures Provision of the CRA, *see Mi Familia Vota v. Petersen*, 129 F.4th 691 (9th Cir. 2025), the petition in *RNC* did not appeal those decisions as to the discriminatory nature of the Arizona law. *See Petition for Writ of Certiorari* at 14-15.

registration applicants, whereas Indiana's Challenged DPOC Provisions apply selectively only to voters or applicants who were issued BMV temporary credentials—a category that captures only naturalized and derived citizens. *RNC* Petition for Writ of Certiorari at i; *compare* Ariz. Rev. Stat. §16- 121.01(C), (D), (E) (requiring all state voter registration applications to be accompanied by DPOC and all federal voter registration voter applications to be accompanied by satisfactory evidence of citizenship in order to vote in specified elections or by certain means), *with* I.C. 3-7-26.3-37(a) (requiring individuals who use a BMV temporary credential number in their voter registration application to provide DPOC in order to vote in all elections) *and id.* 3-7-38.2-7.3(b) (requiring individuals with a BMV temporary credential number to provide DPOC in order to remain registered to vote in all elections). This fundamental distinction means that the Supreme Court's analysis of the Arizona statute will not address the issues raised by Plaintiffs' discrimination claims.

*Second*, the questions presented in *RNC* and *Petersen* also do not address Plaintiffs' claim concerning compliance with the NVRA's Federal Form compliance requirements (Section 6) and may not address Plaintiffs' claim concerning compliance with the NVRA's State Form requirements (Sections 5, 6, 7, and 9). Petitioners in *RNC* and *Petersen* did not raise Federal Form compliance requirements in their certiorari petitions, and to the extent that State Form compliance requirements could be at issue, the facts in *RNC* and *Petersen* are distinguishable from the facts here. In those cases, a separate federal consent decree may apply, so the Supreme Court must consider whether and how to address NVRA compliance in conjunction with a federal consent decree. *See RNC* Petition for Writ of Certiorari at i; *Petersen* Petition for Writ of Certiorari at i. Thus, a stay would serve little purpose with respect to these claims.

Lastly, the questions presented in *RNC* and *Petersen* do not encompass Plaintiffs' claim concerning violations of the NVRA's Public Records Provision. *See* Statement of Claims at 6. Plaintiffs have alleged that Defendants violated the Public Records Provision by refusing to produce requested public records and requested appropriate relief, including an order requiring Defendants to continue to produce responsive records as the Challenged DPOC Provisions are implemented. Compl. ¶¶ 234–41, 247; Statement of Claims at 8. *RNC* and *Petersen* do not concern at all what records must be produced under the Public Records Provision, and Plaintiffs' claim is specific to Defendants' refusal to produce documents related to the implementation of the Challenged DPOC Provisions—far afield from the facts in *RNC* and *Petersen*.

## II. STAYING THE CASE WOULD BLOCK THE RELIEF NECESSARY TO PREVENT DISENFRANCHISEMENT OF THOUSANDS OF ELIGIBLE INDIANA VOTERS

In addition to the Supreme Court being unlikely to resolve issues in this case in *RNC* or *Petersen*, a stay will greatly prejudice Plaintiffs, their members, and Indiana voters, whom will continue to suffer irreparable harm from the Challenged DPOC Provisions. Defendants request that the Court "[v]acate the trial setting in this case, and stay all proceedings pending the Supreme Court's decisions in [*RNC* and *Petersen*]." Mot. Stay ¶ 11. Plaintiffs' Motion for a Preliminary Injunction is still pending, and a stay will delay this case for months or longer, likely over a year. While the Supreme Court has granted certiorari in *RNC*, briefing is ongoing with no date set for oral argument. *See RNC* Proceedings and Orders. The Supreme Court has not granted certiorari in *Petersen*, and the parties cannot know whether, or when, such certiorari would be granted. *See Petersen* Proceedings and Orders.

Defendants' requested stay pending resolution of both cases would guarantee a decision on the Motion for Preliminary Injunction would be delayed until after the 2026 General Election. Additionally, Defendants' requested stay would delay briefing and a ruling on Plaintiffs'

forthcoming summary judgment motion. As detailed in Plaintiffs' Motion for Preliminary Injunction, absent the requested relief, Plaintiffs must continue to divert resources to address the Challenged DPOC Provisions, and their members and other Indiana voters will continue to experience discriminatory treatment and face disenfranchisement in upcoming elections. *See* Prelim. Inj. Mem. at 12, 20–22. Under the Challenged DPOC Provisions, from July 1, 2025, to May 5, 2026 (according to Defendants' recordkeeping), Defendants flagged approximately 3,234 people to send a notice requiring DPOC. *Id.* at 8–9. As Plaintiffs will address in their forthcoming motion for summary judgment, Defendants have continued to enforce the Challenged DPOC Provisions since then, flagging even more naturalized and derived citizens while requiring some voters whose citizenship was already verified to provide DPOC more than once. These flagged individuals must navigate a stressful, confusing, and expensive process to provide DPOC on a tight deadline. *Id.* at 11–12. Plaintiffs continue to divert resources away from core activities to address the harms created by the Challenged DPOC Provisions by identifying, educating, and supporting affected voters to maintain their registration or re-register if they have been removed.

Contrary to Defendants' assertions, the timing of the Motion for Preliminary Injunction does not justify a stay. Plaintiffs moved diligently to advance discovery and develop the record required to support a Motion for Preliminary Injunction, moving for expedited discovery on November 28, 2025, *see generally* Mot. Exp'd Disc., which the Court granted on December 22, 2025, Min. Entry Dec. 17, 2025 Hr'g, Dkt. 33. Plaintiffs then moved to compel certain responses to their expedited discovery request, and the Court ordered Defendants to produce all responsive documents by January 16, 2026. Order Granting Pls' Mot. Compel at 11, Dkt. 53. Despite the Court's order, Defendants' production of lists of voters affected by the Challenged DPOC Provisions was deficient through late April 2026. J. Rep. Status Disc. at 5, Dkt. 81. Plaintiffs filed

their Motion for Preliminary Injunction on May 8, 2026. *See generally* Prelim. Inj. Mot. In contrast, Defendants waited to file their stay motion until the end of costly discovery and almost two months after the Supreme Court granted certiorari in *RNC*, and the parties are now preparing for summary judgment. *See RNC* Proceedings and Orders (showing petition granted on June 29, 2026). Staying the case now would waste the considerable efforts and resources the parties and the Court have already expended, *see* Suppl. J. Rep. Status Disc., Dkt. 112, and would likely require the reopening of discovery at a later date given that the stay may render much of the current discovery stale after another year or more of Defendants' implementation of the Challenged DPOC Provisions. Defendants cannot credibly claim that efficiency concerns favor a stay when their own tactical delay is responsible for the advanced posture of this litigation.

## III. ANY STAY WOULD INCREASE, NOT DECREASE, THE BURDEN ON THE PARTIES AND THE COURT

Far from simplifying this litigation, a stay would only increase the burden on both parties and the Court. As demonstrated above, the pending Supreme Court cases may not resolve any issues presented here and because many of Plaintiffs' claims are not addressed in any way by the questions presented in *RNC* or *Petersen*, this Court would still need to adjudicate those claims regardless of any Supreme Court decision. A partial stay—holding some claims in abeyance while others proceed—would create unnecessary complexity and inefficiency. And a complete stay would serve only to delay relief for Plaintiffs and voters facing imminent harm in upcoming elections, while providing no corresponding benefit to the efficient administration of justice.

Moreover, the parties have already expended significant resources completing expensive, time-consuming fact discovery. The evidentiary record is substantially developed, and the parties are preparing for summary judgment and trial. Granting a stay at this late stage would waste the

judicial resources already invested in this matter and would require the parties to essentially restart their preparation when the stay is lifted, potentially years from now.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' request for a stay.

Dated: September 3, 2026

Respectfully submitted,

*Counsel for Plaintiffs*

*/s/ William R. Groth*
William R. Groth (Ind. Bar No. 7325-49)
Daniel Bowman (Ind. Bar No. 31691-49)
Bowman Legal Services, LLC
9292 N Meridian Street, Suite 311
Indianapolis, IN 46260
(317) 912-3220
daniel@bowmanlegalservices.com
wgroth@fdgtlaborlaw.com

*/s/ Aneel Chablani*
Aneel Chablani*
Ami Gandhi (Ind. Bar No. 38542-53)
Christina Beeler*
Conner Kozisek*
Chicago Lawyers' Committee for Civil Rights
25 East Washington Street, Suite 1300
Chicago, IL 60602
(312) 630-9744
achablani@clccrul.org
agandhi@clccrul.org
cbeeler@clccrul.org
ckozisek@clccrul.org

*/s/ Robert Weiner*
Robert N. Weiner*
Ryan Snow*
Grace Thomas*
Samantha Heyward*
Lawyers' Committee for Civil Rights Under

Law
1500 K Street NW, Suite 900
Washington, DC 20005
(202) 662-8600
rweiner@lawyerscommittee.org
rsnow@lawyerscommittee.org
gthomas@lawyerscommittee.org
sheyward@lawyerscommittee.org
*Counsel for Plaintiffs*
**Appearing Pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, a copy of the foregoing was filed by use of the Court's electronic filing system. Parties may access this document through the Court's electronic filing system.

*/s/ William R. Groth*
William R. Groth (Ind. Bar No. 7325-49)